PEOPLE v DRIELICK
PEOPLE v PLAMONDON
PEOPLE v BLAZIER

Docket Nos. 56735, 57617. Argued February 1, 1977 (Calendar Nos. 2, 3).—Decided July 18, 1977. Certiorari denied by the Supreme Court of the United States January 23, 1978.

The issue in these appeals is whether a recording of a telephone conversation, which was made without a warrant but with the consent of one of the participants in the conversation, violates the constitutional prohibition against unreasonable searches and seizures.

Michael D. Drielick was convicted by a jury in Saginaw Circuit Court, Eugene Snow Huff, J., of first-degree murder. The decedent's wife told police that the defendant had admitted to her that he had killed the decedent. She agreed to telephone the defendant and to allow the police to monitor and record the conversation, in which the defendant again admitted the crime. The recording was admitted into evidence over the defendant's objection. The Court of Appeals, Quinn, P. J., and McGregor and O'Hara, JJ., affirmed (Docket No. 17954). Defendant appeals.

Lawrence Plamondon and Craig Blazier were convicted in the Benzie Circuit Court, William R. Peterson, J., of extortion by threat of accusation. Uwe Wagner, the victim of the extortion, called defendant Plamondon at the suggestion of police to discuss the defendants' threat to break Wagner's arms and legs, and to expose him as a drug dealer unless he paid the defendants $3,000 he owed Blazier for the sale of drugs. The police made a tape recording of the conversation which was admitted into evidence over the defendants' objection. The Court of Appeals, Allen and D. E. Holbrook, Jr., JJ. (D. E. Holbrook, P. J., dissenting), reversed and remanded for a new trial on the

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures § 61.
[2] 68 Am Jur 2d, Searches and Seizures § 31.
[3] 68 Am Jur 2d, Searches and Seizures § 24.
[4] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 5.
[5, 6] 68 Am Jur 2d, Searches and Seizures § 49.

ground that the police seized the evidence unconstitutionally (Docket Nos. 19267, 19268). The people appeal. *Held:*

1. A decision of the Supreme Court of Michigan in 1975 held that, unless authorized by a search warrant, a participant may not, consistent with the Michigan constitutional prohibition against unreasonable searches and seizures, electronically monitor a conversation which is transmitted to law enforcement officers. However, the participant monitoring in the instant cases preceded that decision, which the Court announced was to be applied prospectively only.

2. It is the duty of the Supreme Court of Michigan in deciding a claim that Fourth Amendment rights were violated to determine with the best exercise of the Court's mental powers that law which in all probability will be applied to the present litigants or to others similarly situated in the event of a further appeal from the Supreme Court of Michigan to the United States Supreme Court.

3. The United States Supreme Court has held that police eavesdropping without a warrant on a conversation between an accused and an informant by means of a radio transmitter concealed on the informant does not violate the Fourth Amendment. *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971). The thrust of the opinion by Justice White, which was signed by four Justices, was that there was no invasion of the defendant's justifiable expectations of privacy. Since the law violator knows that what he says is being heard and may be repeated, no different result is required because the conversation is being listened to or recorded electronically with the consent of the faithless participant.

4. Were there to be a further appeal on Fourth Amendment grounds, the view of the law which in all probability would be applied by the United States Supreme Court would be that expressed in Justice White's plurality opinion that monitoring a conversation with the consent of one of the participants does not violate the other participant's constitutionally justifiable expectations of privacy. The decision of the Court of Appeals is affirmed as to Drielick and reversed as to Plamondon and Blazier. The convictions are affirmed.

Justice Ryan, joined by Justice Coleman, concurred in the disposition of the case because the decision of the Supreme Court of Michigan was prospective only and the evidence was not obtained in violation of the Fourth Amendment of the United States Constitution.

56 Mich App 664; 224 NW2d 712 (1974) affirmed.

64 Mich App 413; 236 NW2d 86 (1975) reversed.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—PARTICIPANT MONI-
TORING—CONSTITUTIONAL LAW—PROSPECTIVE APPLICATION.

The rule of law that unless authorized by a search warrant, a
participant may not, consistent with the Michigan constitu-
tional prohibition against unreasonable searches and seizures,
electronically monitor a conversation which is transmitted to
law enforcement officers was given prospective effect only
(Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—PARTICIPANT MONI-
TORING—RADIO TRANSMITTER.

Police eavesdropping without a warrant on conversations between
an accused and an informant by means of a radio transmitter
concealed on the informant does not violate the Fourth Amend-
ment of the United States Constitution (US Const, Am IV).

3. SEARCHES AND SEIZURES—WORDS AND PHRASES—ELECTRONIC EAVES-
DROPPING.

The right to protection against unreasonable searches and sei-
zures cannot turn upon the presence or absence of a physical
intrusion into any given enclosure; the government activities of
electronically listening to and recording a defendant's words by
a device attached to the outside of a public telephone violated
the privacy upon which he justifiably relied by using the
telephone booth and thus constituted a "search and seizure"
within the meaning of the Fourth Amendment of the United
States Constitution (US Const, Am IV).

4. SEARCHES AND SEIZURES—FOURTH AMENDMENT—COURTS—DECI-
SIONAL LAW.

It is the duty of the Supreme Court of Michigan in deciding a
claim that Fourth Amendment rights were violated to deter-
mine with the best exercise of the Court's mental powers that
law which in all probability will be applied to the present
litigants or to others similarly situated in the event of a further
appeal from the Supreme Court of Michigan to the Supreme
Court of the United States (US Const, Am IV).

5. SEARCHES AND SEIZURES—FOURTH AMENDMENT—WITHOUT WAR-
RANT—PARTICIPANT MONITORING—TELEPHONE CONVERSATION.

The view of the law which in all probability would be applied by
the Supreme Court of the United States would be that there
was no invasion of a defendant's constitutionally justifiable
expectations of privacy under the Fourth Amendment by police
monitoring of a telephone conversation with the permission of

the other participant; one contemplating illegal activities must realize and risk that his companions may be reporting to the police (US Const, Am IV).

CONCURRING OPINION

COLEMAN and RYAN, JJ.

See headnote 1.

6. SEARCHES AND SEIZURES—FOURTH AMENDMENT—WITHOUT WAR-
   RANT—PARTICIPANT MONITORING—TELEPHONE CONVERSATION.
   *There was no invasion of a defendant's constitutionally justifiable expectations of privacy under the Fourth Amendment by police monitoring of a telephone conversation with the permission of the other participant (US Const, Am IV).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, for the people.

*E. Brady Denton,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people in *Drielick.*

*John A. Wilson* and *Max E. Simon,* Assistants Attorney General, for the people in *Plamondon* and *Blazier.*

*Brisbois, Sturtz & Rousseau* for defendant Drielick.

*State Appellate Defender Office* (by *John B. Phelps)* for defendants Plamondon and Blazier.

Amicus Curiae:

Prosecuting Attorneys Association of Michigan, by *Donald A. Burge* and *Stephen M. Wheeler.*

LEVIN, J. The issue is whether warrantless electronic eavesdropping of a telephone conversation, with the consent of one of the participants in the

conversation, violates the Fourth Amendment prohibition against unreasonable searches and seizures.

In these cases, consolidated on appeal, a witness for the people telephoned the defendant at the suggestion of police officers and obtained damaging admissions which were electronically recorded. No warrant was obtained from a magistrate before installation of the electronic surveillance equipment. The recordings were played at the trial over defendant's objection.

A panel of the Court of Appeals affirmed Michael Drielick's conviction of first-degree murder[1] on the ground that a warrant is not required for participant monitoring. A separate panel reversed Lawrence Plamondon's and Craig Blazier's convictions of extortion by threat of accusation[2] on the ground that a warrant is required. We affirm in *Drielick,* and reverse in *Plamondon* and *Blazier.*

## I

In *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975),[3] this Court held that, unless authorized by a search warrant, a participant may not, consistent with the Michigan constitutional prohibition against unreasonable searches and seizures,[4] electronically monitor a conversation which is transmitted to law enforcement officers.

---

[1] MCLA 750.316; MSA 28.548.

[2] MCLA 750.213; MSA 28.410.

[3] Two police officers monitored, without authorization of a warrant, a conversation between the defendant and a police informant carrying a battery-operated radio transmitter under his shirt while the informant bought heroin from the defendant in defendant's home. The conversations were not recorded. The eavesdropping officers were permitted over objection to testify regarding the overheard conversations at the trial.

[4] Const 1963, art 1, § 11.

*Beavers* was given prospective effect only.[5] The participant monitoring in these cases preceded *Beavers.* The question whether the Michigan prohibition applies in the instant cases, which were pending on appeal with the issue preserved,[6] was decided by *Beavers.* The Court is not disposed to reconsider that recent decision.

## II

Defendants' principal claim is that warrantless participant monitoring violates the Federal constitutional prohibition against unreasonable searches and seizures. In *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971), the United States Supreme Court rejected this claim and held that police eavesdropping without a warrant on conversations between an accused and an informant by means of a radio transmitter concealed on the informant's person does not violate the Fourth Amendment.

Defendants contend that *White* does not control because: (i) no opinion in that case obtained the signatures of a majority of the sitting justices; (ii)

[5] "The decision today is to be applied prospectively." *People v Beavers, supra,* p 568. *Beavers* was decided April 7, 1975.

[6] See *Desist v United States,* 394 US 244; 89 S Ct 1030; 22 L Ed 2d 248 (1969) where the United States Supreme Court, in holding that the exclusionary rule enunciated in *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), was prospective only, saw no distinction between final convictions and those still pending on appeal:

"All of the reasons for making *Katz* retroactive also undercut any distinction between final convictions and those still pending on review. Both the deterrent purpose of the exclusionary rule and the reliance of law enforcement officers focus upon the time of the search, not any subsequent point in the prosecution, as the relevant date. Exclusion of electronic eavesdropping evidence seized before *Katz* would increase the burden on the administration of justice, would overturn convictions based on fair reliance upon pre-*Katz* decisions, and would not serve to deter similar searches and seizures in the future." *Desist v United States,* 394 US 244, at 253.

the decision in *White* was based on pre-*Katz*[7] law
because *Desist*[8] had held that *Katz* only applied
prospectively and the monitoring in *White* pre-
ceded the decision in *Katz;* and (iii) *White* involved
monitoring of a face-to-face conversation while the
monitoring in these cases was of telephone conver-
sations.

Mr. Justice White wrote the lead opinion in
*White* which was signed by Chief Justice Burger
and Justices Stewart and Blackmun. Mr. Justice
Black concurred on the ground that electronic
eavesdropping does not constitute a "search" or
"seizure" within the meaning of the Fourth
Amendment. Mr. Justice Brennan concurred on
the ground that *Katz* was not retroactive, adding
that the Fourth Amendment interposes a warrant
requirement. Justices Douglas, Harlan and Mar-
shall signed separate dissenting opinions.

In *Katz,* the Court had held that electronic
eavesdropping accomplished by attaching a listen-
ing and recording device to the outside of a public
telephone booth, without the authorization of ei-
ther participant in the conversation or of a war-
rant, was violative of the Fourth Amendment. The
Court declared that the right to protection against
unreasonable searches and seizures "cannot turn
upon the presence or absence of a physical intru-
sion into any given enclosure", that the "trespass"
doctrine enunciated in earlier decisions had been
eroded and could no longer be regarded as control-
ling, and that the "Government's activities in
electronically listening to and recording the pe-
titioner's words violated the privacy upon which
he justifiably relied by using the telephone booth
and thus constituted a 'search and seizure', within

[7] *See* fn 6.
[8] *See* fn 6.

the meaning of the Fourth Amendment". *Katz v United States, supra,* p 353. The Fourth Amendment, said the Court, "protects people, not places". *Katz v United States, supra,* 351.

While Mr. Justice White's lead opinion in *White* said that the United States Court of Appeals had also erred because, by reason of *Desist* making *Katz* wholly prospective, *Katz* did not apply to the electronic surveillance in *White,* the primary thrust of the opinion was that there was no invasion of "the defendant's constitutionally justifiable expectations of privacy". "Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his." *White v United States, supra,* pp 751, 752. Since the law violator knows that what he says is being heard and may be repeated, no different result is required because the conversation is being listened to or recorded electronically with the consent of the faithless participant.

This Court, in *Beavers,* construing the Michigan constitutional prohibition, rejected the argument that participant monitoring was a "variant of the privilege of a party to repeat a conversation", and instead was "persuaded by the logic of Justice Harlan which recognizes a significant distinction between assuming the risk that communications directed to one party may subsequently be repeated to others and the simultaneous monitoring of a conversation by the uninvited ear of a third party functioning in cooperation with one of the

participants yet unknown to the other". *People v Beavers, supra,* pp 563, 565.[9]

## III

It is our duty to "determine with the best exercise of our mental powers of which we are capable that law which in all probability will be applied to these litigants or to others similarly situated" in the event of a further appeal of the Fourth Amendment issue from this Court to the United States Supreme Court.[10]

---

[9] "The impact of the practice of third-party bugging, must, I think, be considered such as to undermine that confidence and sense of security in dealing with one another that is characteristic of individual relationships between citizens in a free society. * * *

"Were third-party bugging a prevalent practice, it might well smother that spontaneity—reflected in frivolous, impetuous, sacrilegious, and defiant discourse—that liberates daily life. Much offhand exchange is easily forgotten and one may count on the obscurity of his remarks, protected by the very fact of a limited audience, and the likelihood that the listener will either overlook or forget what is said, as well as the listener's inability to reformulate a conversation without having to contend with a documented record. All these values are sacrificed by a rule of law that permits official monitoring of private discourse limited only by the need to locate a willing assistant.

\*  \*  \*

"By casting its 'risk analysis' solely in terms of the expectations and risks that 'wrongdoers' or 'one contemplating illegal activities' ought to bear, the plurality opinion, I think, misses the mark entirely. *On Lee* does not simply mandate that criminals must daily run the risk of unknown eavesdroppers prying into their private affairs; it subjects each and every law-abiding member of society to that risk." *United States v White, supra,* pp 787–789 (Harlan, J.)

[10] *Spector Motor Service, Inc v Walsh,* 139 F2d 809, 814 (CA 2, 1943), *remanded on other grounds, Spector Motor Service, Inc v McLaughlin,* 323 US 101; 65 S Ct 152; 89 L Ed 101 (1944). Judge Learned Hand, in dissent, agreed on the governing principle:

"I conceive that the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before it." *Spector Motor Service, Inc v Walsh,* 139 F2d 809, 822, 823 (Hand, J.)

*Similarly, see Mason v United States,* 198 Ct Cl 599; 461 F2d 1364, 1375 (1972), *rev'd on other grounds,* 412 US 391; 93 S Ct 2202; 37 L Ed 2d 22 (1973); *Martin v Virginia,* 349 F2d 781, 784 (CA 4, 1965); *Perkins v Endicott Johnson Corp,* 128 F2d 208, 217 (CA 2, 1942), *aff'd, Endicott Johnson Corp v Perkins,* 317 US 501; 63 S Ct 339; 87 L Ed 424 (1943).

The United States Courts of Appeals for 10 of the 11 circuits have followed Mr. Justice White's lead opinion in *White* in holding that the Fourth Amendment does not require a warrant for electronic participant monitoring.[11] No distinction has been made between electronic monitoring of face-to-face conversations and of telephonic communications.[12]

Since *White* was decided, Justices Black, Douglas and Harlan have left the Court, and Justices Powell, Rehnquist and Stevens have taken their

---

[11] *United States v Diaz,* 535 F2d 130, 133 (CA 1, 1976); *United States v Bonnano,* 487 F2d 654, 657–658 (CA 2, 1973); *United States v Santillo,* 507 F2d 629, 631–632 (CA 3, 1975); *United States v Dowdy,* 479 F2d 213, 229 (CA 4, 1973); *United States v Wilson,* 451 F2d 209, 212 (CA 5, 1971); *Stephan v United States,* 496 F2d 527, 528 (CA 6, 1974); *United States v Gocke,* 507 F2d 820, 823 (CA 8, 1974); *Holmes v Burr,* 486 F2d 55, 59–60 (CA 9, 1973); *United States v Puchi,* 441 F2d 697, 700 (CA 9, 1971); *United States v Quintana,* 457 F2d 874, 878 (CA 10, 1972); *United States v Bishton,* 150 US App DC 51; 463 F2d 887, 892 (1972).

A number of state courts have reached the same conclusion. *State v Wilder,* 18 Ariz App 410; 502 P2d 1087, 1088 (1972); *Kerr v State,* 256 Ark 738; 512 SW2d 13, 20–21 (1974); *People v Murphy,* 8 Cal 3d 349; 105 Cal Rptr 138; 503 P2d 594, 600–601 (1972); *People v Morton,* — Colo —; 539 P2d 1255, 1257 (1975); *State v Delmonaco,* 165 Conn 163; 328 A2d 672, 673 (1973); *People v Richardson,* 60 Ill 2d 189; 328 NE2d 260, 263 (1975); *McCarty v State,* — Ind App —; 338 NE2d 738, 741 (1975); *State v Wigley,* 210 Kan 472; 502 P2d 819, 821–822 (1972); *Avery v State,* 15 Md App 520; 292 A2d 728, 742–743 (1972); *Everett v State,* 248 So 2d 439, 442–443 (Miss, 1971); *State v Anepete,* 145 NJ Super 22; 366 A2d 996, 998 (1976); *People v Phillips,* 50 App Div 2d 937; 390 NYS2d 6, 7 (1976); *Escobedo v State,* 545 P2d 210, 216 (Okla Crim, 1976); *Commonwealth v Donnelly,* 233 Pa Super 396; 336 A2d 632, 640–641 (1975); *Thrush v State,* 515 SW2d 122, 125 (Tex Crim App, 1974).

Other state courts, like Michigan, have concluded that warrantless electronic participant monitoring is violative of a state constitutional prohibition. *Tollett v State,* 272 So 2d 490, 492–493 (Fla, 1973); *State ex rel Arnold v Rock County Court,* 51 Wis 2d 434; 187 NW2d 354, 356–357 (1971); cf. *State v Smith,* 72 Wis 2d 711; 242 NW2d 184, 186–187 (1976).

[12] *United States v Bonnano, supra; United States v Santillo, supra; United States v Dowdy, supra; United States v Wilson, supra; Stephan v United States, supra; United States v Puchi, supra; United States v Quintana, supra.*

places on the Court. All four justices who signed
Mr. Justice White's opinion remain on the Court.

On at least 14 occasions the United States Su-
preme Court has declined to grant certiorari to
review decisions of the United States Courts of
Appeals holding that the Fourth Amendment does
not preclude warrantless, electronic participant
monitoring.[13] While denial of certiorari is not af-
firmance, it is a fact of some significance especially
since there is no indication in subsequent decisions
of the United States Supreme Court which would
support the conclusion that the "doctrinal trend"[14]
has shifted from the view expressed in Mr. Justice
White's opinion.

We are of the opinion that were there to be a
further appeal on Fourth Amendment grounds,
the view of the law which in all probability would
be applied by the United States Supreme Court
would be that expressed in Mr. Justice White's
opinion.

---

[13] *United States v Warren,* 453 F2d 738 (CA 2, 1972), *cert den,* 406
US 944; 92 S Ct 2040; 32 L Ed 2d 331 (1972); *United States v Koska,*
443 F2d 1167 (CA 2, 1971), *cert den,* 404 US 852; 92 S Ct 92; 30 L Ed
2d 92 (1971); *United States v Santillo, supra, cert den sub nom
Buchert v United States,* 421 US 968; 95 S Ct 1960; 44 L Ed 2d 457
(1975); *United States v Dowdy, supra, cert den,* 414 US 866; 94 S Ct
132; 38 L Ed 2d 118 (1973); *reh den,* 414 US 1117; 94 S Ct 851; 38 L
Ed 2d 745 (1973); *United States v Wilson, supra, cert den sub nom
Fairman v United States,* 405 US 1032; 92 S Ct 1298; 31 L Ed 2d 490
(1972); *United States v Caracci,* 446 F2d 173 (CA 5, 1971), *cert den,*
404 US 881; 92 S Ct 202; 30 L Ed 2d 162 (1971); *United States v Avila,*
443 F2d 792 (CA 5, 1971), *cert den,* 404 US 944; 92 S Ct 295; 30 L Ed
2d 258 (1971); *United States v Lippmann,* 492 F2d 314 (CA 6, 1974),
*cert den* 419 US 1107; 95 S Ct 779; 42 L Ed 2d 803 (1975); *Stephan v
United States, supra, cert den sub nom Marchesani v United States,*
423 US 861; 96 S Ct 116; 46 L Ed 2d 88 (1975); *United States v Gocke,
supra, cert den 420 US 979; 95 S Ct 1407; 43 L Ed 2d 660 (1975);
United States v King,* 472 F2d 1 (CA 9, 1972), *cert den sub nom
Butler v United States,* 414 US 864; 94 S Ct 37, 40, 174; 38 L Ed 2d 84
(1973); *United States v Puchi, supra, cert den,* 404 US 853; 92 S Ct 92;
30 L Ed 2d 92 (1971); *United States v Quintana, supra, cert den,* 409
US 877; 93 S Ct 128; 34 L Ed 2d 130 (1972); *Holmes v Burr, supra,
cert den,* 414 US 1116; 94 S Ct 850; 38 L Ed 2d 744 (1973).

[14] *See Spector Motor Service, Inc v Walsh, supra.*

The Court of Appeals is reversed in *Plamondon* and *Blazier,* and affirmed in *Drielick.* The convictions are affirmed.

KAVANAGH C. J., and WILLIAMS, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

RYAN, J. *(concurring).* I concur with Justice LEVIN that the evidence obtained as a result of the electronic participant monitoring in these cases was not obtained unconstitutionally despite the holding in *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), because *Beavers,* having prospective application only, is inapplicable to these cases.

I am of the view as well that the evidence was not obtained in violation of the Fourth Amendment of the Constitution of the United States for the reasons announced by Mr. Justice White in his lead opinion in *United States v White,* 401 US 745, 746; 91 S Ct 1122; 28 L Ed 2d 453 (1971).

For the foregoing reasons alone I concur in the majority's disposition of these cases.

COLEMAN, J., concurred with RYAN, J.