218 N.J. Super. 210 (1987)
527 A.2d 482
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS FOLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1987.
Decided June 8, 1987.
*212 Before Judges O'BRIEN, SKILLMAN and LANDAU.
Pogarsky & Louis, attorneys for appellant (Frank A. Louis, on the brief).
Edward J. Turnbach, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Assistant County Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal involves the constitutionality of a State Police investigatory procedure called Operation Lookout. This procedure consists of stationing troopers in toll booths on the Garden State Parkway to observe drivers who appear to be under the influence of alcohol.
Defendant appeared to a trooper involved in Operation Lookout to be under the influence. Therefore, the trooper ordered him to pull to the side of the road. The trooper directed defendant to perform a series of "psychophysical" tests and *213 made additional observations which confirmed the trooper's initial impression that defendant was under the influence. Defendant subsequently took two breathalyzer tests, which produced readings of .20% and .21%. He was then charged with driving while under the influence of alcohol, in violation of N.J.S.A. 39:4-50.
Defendant moved in the Law Division to suppress all evidence against him on the grounds that Operation Lookout violated his rights under the Fourth Amendment. This motion was denied. Defendant then pled guilty in municipal court. On appeal the only issue raised by defendant is the constitutionality of Operation Lookout.
Preliminarily, we note that defendant does not dispute that the trooper had an adequate basis for temporarily detaining him once he made his initial observations from the toll booth. Nor does defendant dispute that there was probable cause to arrest him after the trooper conducted "psychophysical" tests and made additional observations of him during the initial detention. Rather, defendant's sole argument is that the initial observations made of him from the toll booth violated his rights under the Fourth Amendment.
The Fourth Amendment prohibits "unreasonable searches and seizures." Hence, a claim under the Fourth Amendment must be based on either a "seizure" or a "search."[1] We *214 conclude that observations by a police officer stationed in or about a toll booth of drivers who stop to pay tolls are neither "seizures" nor "searches" within the meaning of the Fourth Amendment. Therefore, we affirm.

I
A "seizure" of the person requires some "detention ... against his will." Cupp v. Murphy, 412 U.S. 291, 294, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973). "Obviously, not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); see also 3 LaFave, Search & Seizure (2 ed. 1987) § 9.2(h). Hence, no "seizure" occurs if a police officer simply observes or speaks to a person whose automobile is stopped. United States v. Castellanos, 731 F.2d 979 (D.C. Cir.1984); Isam v. State, 582 S.W.2d 441, 444 (Tex. Crim. App. 1979).
It is readily apparent that the trooper's initial observations were not preceded by a "seizure" of defendant. Defendant did not stop his automobile at the direction of the trooper. He simply stopped to pay a toll, in the same manner as every other driver on the parkway. Defendant of course had a legal obligation to stop for this purpose, just as drivers are obligated to stop at red lights and stop signs for purposes of highway safety. However, a brief stop for such regulatory purposes does not constitute "detention by the police" and hence is not a "seizure" within the meaning of the Fourth Amendment.
In arguing that Operation Lookout violates the Fourth Amendment, defendant places primary reliance upon Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) and State v. Kirk, 202 N.J. Super. 28 (App.Div. 1985). However, *215 both Prouse and Kirk involved police stops and hence "seizures" of the occupants of automobiles. The Court in Prouse made this point clear in the very first sentence of its discussion of the Fourth Amendment: "The Fourth and Fourteenth Amendment are implicated in this case because stopping an automobile and detaining its occupants constitute a `seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." 440 U.S. at 653, 99 S.Ct. at 1396. Similarly, in State v. Kirk, the court concluded that "... the road block in this case was violative of our State constitutional provision against unreasonable seizure." 202 N.J. Super. at 37. Since there was no "seizure" of defendant when he was initially observed by the trooper, the procedures which Prouse and Kirk require in order to validate brief detentions of drivers are inapplicable to Operation Lookout.[2]

II
A simple observation into the interior of an automobile by a police officer located outside the automobile is not a "search" within the meaning of the Fourth Amendment. Texas v. Brown, 460 U.S. 730, 739-740, 103 S.Ct. 1535, 1541-1542, 75 L.Ed.2d 502 (1983); see also United States v. Head, 783 F.2d 1422, 1426-1428 (9th Cir.1986), cert. den. ___ U.S. ___, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); United States v. Finch, 679 F.2d 1083 (4th Cir.1982); State v. Planz, 304 N.W.2d 74, 78-80 *216 (N.D.Sup.Ct. 1981); Pennsylvania v. Milyak, 508 Pa. 2, 493 A.2d 1346, 1348-1349 (1985). See generally, 1 LaFave, supra, § 2.5(c). "There is no legitimate expectation of privacy, ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Texas v. Brown, supra, 460 U.S. at 740, 103 S.Ct. at 1542; see also State v. Smith, 37 N.J. 481, 496-497 (1962), cert. den. 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963).
The trooper's view of defendant from the toll booth was no different than the view of a toll collector from the same location or the view of a policeman standing on a street corner at which defendant might have stopped for a red light. Therefore, defendant could have no legitimate expectation of privacy in his physical appearance while driving an automobile, and the trooper's view into his automobile was not a "search" within the meaning of the Fourth Amendment.
Defendant argues that the trooper's view into his car violated the Fourth Amendment, because the discovery of evidence in "plain view" must be "inadvertent," see Coolidge v. New Hampshire, 403 U.S. 443, 464-473, 91 S.Ct. 2022, 2037-2042, 29 L.Ed.2d 564 (1971), and here the "search" was not "inadvertent" since the trooper's sole reason for being in the toll booth was to detect drivers who were under the influence. However, as we pointed out in State v. O'Herron, 153 N.J. Super. 570, 576 n. 2 (App.Div. 1977), cert. den. 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (1978): "[W]here the `plain view' is made without an intrusion at all, it is entirely irrelevant whether the police make their observations inadvertently or intentionally." Professor LaFave accurately explains why "inadvertent discovery" is not required in a case such as this:
... [T]he concern here is with plain view ... as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in Coolidge, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area. This includes the case in which *217 an officer discovers an object which has been left in an "open field" or similar nonprotected area, and also those cases in which an officer  again, without making a prior physical intrusion  sees an object on the person of an individual, within premises, or within a vehicle. In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement.
It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the Coolidge plurality opinion.... . [T]he observation need not have been inadvertent. As Judge Moylan has pointed out, in such a case
the condition of inadvertence is certainly not operational. In surveying sidewalks, streets and gutters and in roaming the "open fields" (even as technical trespassers), the police would seem to be free to go on fishing expeditions or to go on planned reconnaissances * * * in such nonprotected places, whether the viewing be inadvertent or not. [1 LaFave, supra, § 2.2(a) at 322-323]
See also State v. Powell, 99 N.M. 381, 658 P.2d 456, 459-460 (Ct. App. 1983), cert. den. 99 N.M. 358, 658 P.2d 433 (Sup. Ct. 1983).
The conclusion that police observations made without physical intrusion into a protected area need not meet the Coolidge "inadvertence" requirement is directly supported by recent decisions of the Supreme Court in California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) and United States v. Dunn, ___ U.S. ___, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). Both Ciraolo and Dunn involved police observations for drugs without a warrant and without probable cause. In both cases, the Court held that there was no Fourth Amendment violation because the police observations were made without any intrusion into an area protected by the Fourth Amendment. The Court did not require that the discovery of the drugs be "inadvertent." To the contrary, the Court stated in Dunn:
[T]he Fourth Amendment "has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." [California v. Ciraolo, 476 U.S. at ___, 106 S.Ct. at 1812, 90 L.Ed.2d at 216]. Importantly, we deemed it irrelevant [in Ciraolo] that the police observation at issue was directed specifically at the identification of marijuana plants growing on an area protected by the Fourth Amendment. [Id., 476 U.S. at ___, 106 *218 S.Ct. at 1813, 90 L.Ed.2d at 217.] [United States v. Dunn, supra, ___ U.S. at ___, 107 S.Ct. at 1141, 94 L.Ed.2d at 337].
That the purpose of Operation Lookout is to detect drivers under the influence of alcohol is also irrelevant. Rather, the fact that the troopers involved in Operation Lookout are stationed on a public highway, and that drivers such as defendant therefore have no legitimate expectation that their physical appearances will be protected from a trooper's view, compels the conclusion that the trooper's observation of defendant from the toll booth was not a "search." Texas v. Brown, supra.
Affirmed.
NOTES
[1] Article I, paragraph 7 of the New Jersey Constitution contains a prohibition against "unreasonable searches and seizures" nearly identical in wording to the Fourth Amendment. Defendant suggests, without supporting argument, that we should construe the New Jersey Constitution to afford him greater rights than under "general federal constitutional law." With respect to some search and seizure issues, our Supreme Court has interpreted Article I, paragraph 7 more broadly than the Supreme Court of the United States' interpretations of the Fourth Amendment. See, e.g., State v. Hunt, 91 N.J. 338 (1982); State v. Alston, 88 N.J. 211 (1981); State v. Johnson, 68 N.J. 349 (1975). However, our Supreme Court has not interpreted the meaning of "search" or "seizure" under the New Jersey Constitution to be different than under the Fourth Amendment. We are satisfied that our conclusion that Operation Lookout does not involve a "search" or "seizure" is equally valid under both the United States and New Jersey Constitutions.
[2] The State argues that even assuming Prouse and Kirk are applicable, Operation Lookout does not involve the "unbridled discretion of police officers," Delaware v. Prouse, supra, 440 U.S. at 663, 99 S.Ct. at 1401, State v. Kirk, supra, 202 N.J. Super. at 39, but rather is conducted pursuant to appropriate State Police supervisory controls. The State further argues that since every driver who passes through a toll booth manned by a trooper involved in Operation Lookout is subject to the same observations of his appearance, this police procedure does not pose the same dangers of arbitrary enforcement as the stops involved in Prouse and Kirk. We find it unnecessary to consider this argument in light of our conclusion that Operation Lookout does not involve any form of "seizure" within the meaning of the Fourth Amendment.