**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0371-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEON L. BROWNE,

    Defendant-Appellant.

_____

Submitted September 9, 2019 – Decided September 13, 2019

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 15-08-0997.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the briefs).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura C. Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Deon L. Browne was found guilty of the second-degree offense that prohibits "certain persons" from possessing a firearm, N.J.S.A. 2C:39-7(b). The trial judge sentenced defendant to a seven-year custodial term, with a five-year period of parole ineligibility.

In this direct appeal, defendant argues the trial court erred in granting the State's pretrial application to obtain a buccal swab from him to extract a sample of his DNA. The State's laboratory analysis, which was admitted into evidence at trial, showed defendant's DNA matched DNA found on a handgun he discarded when he was seen fleeing from the police. Defendant contends the incriminating DNA proof should have been excluded because the buccal swab was obtained without a sufficient foundation, as prescribed by State v. Gathers, 234 N.J. 208 (2018). He further argues the jury charge on the certain-persons offense was flawed, and he is thereby entitled to a new trial.

For the reasons that follow, we affirm defendant's conviction.[1] We conclude he waived the right to appeal the trial court's admission of the DNA evidence, by failing to move to suppress the buccal swab sample he claims was illegally obtained. In addition, we discern no flaw in the jury charge requiring appellate relief.

---

[1] Defendant does not appeal his sentence.

A-0371-17T1

I.

According to the State's proofs at trial, at approximately 1:00 a.m. on April 19, 2015, Trenton Police Detective Jose Gonzalez and his partner Antonio Wilkie-Guiot were on patrol. They were dispatched to the intersection of Phillips Avenue and Dexter Street in Trenton in response to a report of a "light-skinned black male, with blue jeans, black hooded sweatshirt, [and] with a gun in his waist." Two other officers also responded to the report.

Detective Gonzalez testified he saw a group of five men on the sidewalk at the specified location. The officers illuminated the group with a spotlight on their marked police vehicle, causing the group to start dispersing. Defendant's garb matched the clothing description provided by dispatch.

According to Gonzalez, when defendant saw his police car, he "bladed" (meaning turned) his body away towards a wall, and grabbed his waistband as if he were trying to conceal something. Gonzalez and Wilkie-Guiot got out of their police car and pointed one or more flashlights at the men. The officers ordered the men to show their hands. Everyone but defendant complied.

Defendant began running away from the officers, and Gonzalez and another officer pursued him. Gonzalez noticed that defendant was holding a silver handgun while he ran.

A-0371-17T1

Gonzalez ordered defendant to stop running, stating that he was under arrest. Defendant nevertheless continued running, and, as described by Gonzalez, flung the handgun "across his body" and into the "side of [a] house." Gonzalez heard the "distinct sound" of "heavy metal . . . hitting concrete."

Defendant continued running, and hopped a fence. Gonzalez also hopped the fence, tackled defendant to the ground, and placed him under arrest.

Wilkie-Guiot recovered the handgun. He similarly testified that he saw defendant throw "a shining silver item."

Defendant subsequently was charged by a grand jury in a four-count indictment with various offenses, including the certain-persons offense. The State eventually dismissed all the charges, other than the certain-persons count.

In June 2016, the State applied to the court to obtain a buccal swab from defendant. In support of that application, the State submitted a certification by an acting assistant prosecutor explaining that the handgun the police observed defendant discarding had been submitted to the State Police laboratory for analysis and testing for the presence of DNA. The certification asserted that it was "necessary to obtain a buccal swab reference from the defendant to determine if his DNA was recovered from the handgun."

A-0371-17T1

Defendant's trial counsel advised the court that she was "not consenting" to the buccal swab. She specifically expressed concerns about the trial date being delayed to enable the DNA testing. Counsel did not, however, raise any specific objection to the sufficiency of the State's certification.

The trial court granted the State's application for the buccal swab. The court noted that the presence or absence of defendant's DNA on the discarded handgun was likely to have "great relevance for both sides in this case."

The buccal swab was thereafter obtained from defendant, and the DNA extracted from it was compared to the DNA found on the handgun. A forensic scientist from the State Police who performed the comparison testified at trial that defendant was the source of the DNA profile that had been obtained from the gun.

Defendant presented no competing DNA expert testimony at trial. However, his attorney did argue to the jury that the DNA taken from the gun was suspect. The defense attorney noted the gun had been handled by multiple persons, and questioned the reliability of the testing methods used by the State's expert. The attorney maintained the State had failed to prove beyond a

5

reasonable doubt that defendant had possessed the handgun, and thus he was not guilty of the certain-persons offense.[2]

As we have already noted, the jury returned a verdict in favor of the State, and this appeal followed.

## II.

On appeal, defendant presents two arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR A DNA SWAB OF THE DEFENDANT BECAUSE THE STATE HAD FAILED TO SHOW THE NECESSARY PROBABLE CAUSE FOR THE SEARCH.
>
> POINT II
>
> THE COURT'S CHARGE ON THE CERTAIN PERSONS NOT TO HAVE ANY FIREARMS COUNT WAS INCORRECT BECAUSE IT EXPANDED THE SCOPE OF CERTAIN PERSONS OFFENSES, ALLOWING THE JURY TO CONVICT THE DEFENDANT WITHOUT PROOF BEYOND A RE[A]SONABLE DOUBT AND WITHOUT UNANIMITY AMONGST THE JURORS. (Not Raised Below).

---

[2] The parties did stipulate that defendant had previously committed a predicate offense prohibiting him from possessing a firearm, and that he lacked a permit to possess one.

6

We first consider defendant's contention that the trial court erroneously permitted the State to extract a buccal swab from him, and that consequently the DNA proof the prosecution presented against him at trial was inadmissible. In particular, defendant argues the State's certification submitted in support of its buccal swab application in 2016 was insufficient under the standards set forth by the Supreme Court two years later in Gathers, 234 N.J. at 221-25.

In its responding brief on appeal, the State argues, as a threshold matter, that defendant waived the ability to appeal the admission of the DNA evidence from his buccal swab. Defendant did not file a reply brief countering this argument. However, upon reviewing the State's contention of waiver, we invited defendant to submit a supplemental brief on the subject, and have considered that additional submission.[3] Having now done so, we agree with the State that defendant failed to preserve his right to appeal the trial court's allowance of the buccal swab evidence.

---

[3] We also invited counsel to address whether the Supreme Court's recent grant of leave to appeal in In re the Investigation of Burglary & Theft, 236 N.J. 629 (2019), a case that concerns DNA buccal swab applications, should affect our consideration of this appeal. Both parties agreed that the issues before the Court in that case are unlikely to affect the present case, and that we should proceed to decide the appeal.

Rule 3:5-7 prescribes the procedures that must be followed in the trial court if a criminal defendant contends he has been aggrieved by an allegedly unlawful search or seizure of evidence. Subsection (f) of that rule clearly delineates the consequences of a defendant's failure to make an appropriate timely motion to suppress such evidence:

> If a timely motion [to suppress] is not made in accordance with this rule, the defendant shall be deemed to have waived any objection during trial to the admission of evidence on the ground that such evidence was unlawfully obtained.
>
> [R. 3:5-7(f) (emphasis added).]

This provision sensibly requires that an orderly suppression proceeding should occur before trial in instances where a defendant seeks to preclude the State from presenting certain evidence to the jury on the grounds that it was illegally obtained. The rule calls for such admissibility challenges to be resolved in advance of the trial, so that both parties will know before a jury is empaneled whether the evidence will be admissible. See R. 3:10-2(b) (concerning the timing of pretrial motions). If the trial court decides to suppress the evidence, the State would have the opportunity to pursue interlocutory appellate review of that decision from this court. See R. 2:5-6(a).

A-0371-17T1

Our courts have repeatedly enforced the waiver provision set forth in Rule 3:5-7(f). See, e.g., State v. Martin, 87 N.J. 561, 566-67 (1981) (noting that "Rule 3:5-7 plainly requires a motion to suppress to be made before trial and in a timely manner. Failure to make a timely motion results in a waiver of a defendant's right to object to the evidence's admission at trial."); State v. Johnson, 365 N.J. Super. 27, 33-34 (App. Div. 2003) (recognizing the same mandate, but noting the procedural bar does not extend to claims of ineffective assistance of counsel); State v. Cox, 114 N.J. Super. 556, 559-60 (App. Div. 1971) (enforcing the rule's waiver requirement). We shall adhere to the rule in this case as well.

We recognize that defendant's trial attorney advised the court at the June 2016 hearing she did not consent to the buccal swab testing when the State presented its application. Nonetheless, a lawyer's assertion of non-consent is not an affirmative motion to suppress.

Even if we were to indulgently treat counsel's expression of non-consent as an objection, there is no indication in the record that defendant voiced to the trial court any specific challenges to the sufficiency of the State's application and its supporting certification. Had defendant done so in a timely manner, the State would have had the opportunity and the incentive to present any additional supporting grounds that might have existed to justify the buccal swab.

A-0371-17T1

For instance, defendant now argues for the first time on appeal that the supporting certification is inadequate because, among other things, it was not based on the personal knowledge of the assistant prosecutor who signed it and is not trustworthy. Had that argument been made below, the State potentially could have amplified the prosecutor's certification with supporting documentation from police records, or perhaps an additional certification from one of the police officers. That process did not occur because defendant presented no timely opposing arguments.

Moreover, there is no indication that defendant ever moved to suppress the DNA evidence once the laboratory testing revealed an incriminating match. Had such a pretrial motion to suppress been made, the State would have had a fair opportunity to oppose the motion and marshal responsive proofs. Instead of filing such a motion, defendant's counsel at trial simply attempted to attack the chain of custody of the DNA samples and the testing methodology, but did not argue the buccal swab had been illegally obtained.

In light of this clear non-compliance with Rule 3:5-7(f), we must reject defendant's belated effort to resuscitate arguments that should have been duly presented to the trial court. The issue has been waived. Consequently, we do not reach the merits of defendant's present contentions of illegality of the buccal

10

swab. In particular, we need not decide here whether the standards for such applications delineated by the Supreme Court in Gathers in July 2018 retroactively apply to an application the State presented nearly two years earlier in 2016.

B.

Defendant's other argument concerning the certain-persons jury charge is also unavailing, and it requires little comment.

In its final charge to the jury, the trial court explained the discrete elements that must be established to prove guilt of a certain-persons offense. As part of that charge, the court appropriately instructed that, as the third listed element, the jury would need to find that "defendant is a person who has previously been convicted of a predicate offense." (Emphasis added). The court then went on to advise the jury that the parties had "stipulated or agreed that the defendant had previously been convinced [sic] of a crime or a predicate offense." (Emphasis added).[4] The court went on to summarize this instruction, reiterating that the State was obligated to prove defendant "is a person who was previously convicted of a crime that is a predicate offense." (Emphasis added).

---

[4] This wording also appears on the written draft charge.

A-0371-17T1

Defendant did not object to any of these jury instructions at trial. On appeal, he now seizes upon the court's one-time reference to "a crime or a predicate offense," instead of stating a crime that "is" a predicate offense. (Emphasis added). Defendant hypothesizes that the jury must have been confused by this phraseology, and possibly one or more jurors voted to convict him by impermissibly finding that he previously had been guilty of a crime that was not an enumerated predicate offense under N.J.S.A. 2C:39-7(b). He contends the verdict might not have been unanimous, because one or more jurors might have mistakenly thought he had not committed a predicate offense but merely a "crime" that is not enumerated in the statute.

There is no merit to this semantic argument. Since defendant did not object to the jury charge, he must demonstrate plain error on appeal to obtain relief. State v. Walker, 203 N.J. 73, 89-90 (2010). The claimed error must be so egregious that it "rais[es] a reasonable doubt as to whether the error [in the charge] led the jury to a result it otherwise might not have reached." State v. Tierney, 356 N.J. Super. 468, 477 (App. Div. 2003) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). Moreover, in assessing whether such a plain error occurred in connection with a jury charge, we must consider the charge as a

whole, not just an isolated segment of it.  State v. Torres, 183 N.J. 554, 564 (2005).

We discern no plain error here.  At most, the trial court's singular reference to "a crime or a predicate offense" appears to be a minor lapse, one that was promptly cured by the court's reference moments later to the State's obligation to prove defendant is a person who was previously convicted of a crime that "is a predicate offense." (Emphasis added).  Moreover, the verdict sheet supplied to the jurors plainly set forth this element, accurately reflecting the parties' stipulation:

> How do you find as to the Count One of the Indictment, which charges the Defendant, Deon Browne, with Certain Persons not to Possess a Firearm, in that on April 19, 2015, in the City of Trenton, he did, having been convicted of a predicate offense, possess and/or control a firearm, to wit: a Cobra Firearm .380 handgun?
>
> [(Emphasis added).]

For these many reasons, defendant's request for a new trial on this basis must fail.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION